IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JENNIFER M. KING, an Individual;<br><br>Plaintiff,<br><br>vs.<br><br>CATHOLIC HEALTH INITIATIVES, a Non-Profit Foreign Corporation Operating in Nebraska; and CHI NEBRASKA d/b/a CHI Health<br><br>Defendants. | 8:18CV326<br><br>ORDER |

      This matter comes before the Court on the Motion to Compel Defendants' Discovery Responses and Request for Rule 37 Relief (Filing No. 81) filed by the plaintiff, Jennifer King, and Defendants' Motion to Strike the Declaration of Katherine A. McNamara (Filing No. 89). For the following reasons, the Court will grant King's motion in part, and deny Defendants' motion.

## BACKGROUND

      King filed the instant action against her former employer(s), CHI Nebraska d/b/a CHI Health and Catholic Health Initiatives[1] on July 10, 2018, alleging they failed to take proper remedial action to protect her from sexual harassment from another employee. (Filing No. 1). In King's Amended Complaint filed on April 19, 2019, she asserts Title VII claims for hostile work environment and gender discrimination, as well as claims for intentional and negligent infliction of emotional distress, breach of contract, constructive discharge, and negligent hiring/supervision/retention. (Filing No. 54). King sets forth the following allegations in her Amended Complaint:

      King began her employment at CHI in April 2003 as a pharmacist and was ultimately promoted to Director of Pharmacy at Bergan Mercy Medical Center, Creighton University Medical Center, and Lasting Hope Recovery Center. Beginning in 2014, another CHI employee, Lawrence Kelly, began exhibiting alarming and inappropriate behavior after developing a crush on one of

---

[1] Defendant CHI Nebraska d/b/a CHI Health asserts it is improperly named as "Catholic Health Initiatives" in Plaintiff's pleadings and that only CHI Nebraska d/b/a CHI Health employed Plaintiff. See, e.g., Filing No. 83-6; Filing No. 87 at p. 1 n.1. The Court will collectively refer to Defendants as "CHI" throughout this Order.

King's subordinates. In January 2015, Kelly began harassing King. King asserts she repeatedly reported Kelly's behavior to CHI supervisors, administrators, and human resources, including Mike Tiesi, Denise Robertson, Joanne Dzubak, and Todd Hoffman. In March 2015, Kelly took six weeks of FMLA leave for inpatient psychiatric treatment, but when he returned in May 2015 he continued to "constantly e-mail, message, hover, and follow" King. King continued to send "multiple messages" to various individuals, including Tiesi, Robertson, and Chris Evans, expressing concerns and discomfort with Kelly's stalking and predatory behavior.

King met with Robertson, Tiesi, and Hoffman on May 26, 2015, to discuss the severity of the situation with Kelly and express her fear for her safety and safety of others. No disciplinary action was taken against Kelly, who continued his harassing behavior. In August of 2015, human resources asked Kelly to sign a written boundary agreement drafted by King to stay away from the pharmacy where she worked. The agreement provided for Kelly's immediate dismissal if he failed to follow its terms. The agreement was never enforced. King continued to email and otherwise communicate with supervisors, including Tiesi, about Kelly's threatening, stalking, and harassing behavior, through January 2016. On February 26, 2016, King obtained a protection order against Kelly in Nebraska state court. King emailed Robertson on February 29, 2016, requesting guidance on how to communicate to staff that Kelly was not permitted on campus per the terms of the protection order, but CHI did not take her protection order seriously. King was forced to resign from her employment on March 23, 2016, due to CHI's lack of response to the situation with Kelly. Kelly's employment was terminated on April 4, 2016, for "not meeting job expectations." See [Filing No. 54](#).

CHI largely denies King's allegations above, including her characterizations of her interactions with Kelly, his behavior, and CHI's responses to her communications and complaints. ([Filing No. 59](#)). CHI also raises several affirmative defenses, including that King's claims are barred by "waiver, estoppel, laches, unclean hands and/or ratification," CHI "exercised reasonable care to prevent and promptly correct any alleged improper behavior," and CHI's "remedial measures were adequate to respond to any actual or constructively known discrimination or harassment." ([Filing No. 59 at p. 26](#)).

King's motion to compel concerns the parties' ongoing dispute regarding Electronically Stored Information ("ESI"), including both King's and Kelly's emails CHI maintains it deleted pursuant to its document retention policy 30-days after King and Kelly separated from their

employment. King argues that CHI had a duty to maintain relevant ESI as early as 2015, and certainly by the time she resigned in March 2016, as CHI should have known King could have a claim against it. King argues that CHI has not met its burden to show that the time and expense of retrieving deleted ESI is unduly burdensome. ([Filing No. 82](#)). King therefore requests an order compelling CHI (1) to identify whether it is withholding any documents responsive to Request for Production No. 10, which seeks all documents generated or received by CHI's Employee Assistance Program ("EAP") concerning King or Kelly, ([Filing No. 83-3](#)), and (2) to withdraw objections and supplement its answer to Interrogatory No. 5, which asks CHI to "describe the actions and/or efforts" it took to locate and identify ESI, including the custodians and search terms used. ([Filing No. 83-2 at pp. 2-3](#)). King also requests Rule 37 Sanctions and asks the Court to find: (1) CHI had a duty to preserve the ESI of King and Kelly as early as 2015; (2) CHI failed to adequately preserve such ESI and made no efforts to retrieve the deleted ESI; and (3) King has been prejudiced because of the destruction. ([Filing No. 82 at pp. 3-4](#)).

CHI opposes King's motion on several grounds. CHI first argues that King's motion does not contain the required certification that she conferred or attempted to confer in good faith to obtain the requested discovery prior to court action, as required by [Fed. R. Civ. P. 37(a)(1)](#) and NECivR [7.1](#)(i). ([Filing No. 87 at p. 1](#)). CHI maintains it has already provided King with all requested discovery in its control or custody and ran King's requested additional searches through several available custodians. ([Filing No. 87 at pp. 2-5](#)). CHI asserts that, to the extent any backup versions of the requested data from King and Kelly as custodians exists, it would be too expensive and burdensome to retrieve, and that the discovery sought by King may be obtained by other sources such as deposition testimony. CHI argues Rule 37 sanctions are not appropriate because its duty to preserve information related to this lawsuit did not arise until it received King's demand letter dated August 2016, by which time CHI had already deleted King and Kelly's ESI pursuant to its document retention policy. ([Filing No. 87 at pp. 5-12](#)).

**ANALYSIS**

King's requests for ESI are contained in her Requests for Production Nos. 6-8, which ask CHI to produce: emails and electronic communications CHI "generated or received concerning Plaintiff and/or Lawrence Kelly" from January 1, 2010, to the present, (Request No. 6); emails, instant messages, and other correspondence regarding Kelly's "behavior, conduct, discrimination,

3

employment, health, mental health, stalking, and work" as well as his "allegedly inappropriate or improper actions, behavior, [and] conduct" from January 1, 2008, through the present, (Request No. 7); and emails, instant messages, and other correspondence exchanged between King and CHI or Kelly, CHI or its agents/employees/directors, and between CHI and Kelly, or anyone else, regarding Kelly's behavior, harassment, stalking, mental health, inappropriate conduct, leave of absences/FMLA time off, and termination, King's protective order against Kelly, and any of King's allegations in her Complaint, (Request No. 8). ([Filing No. 83-3 at pp. 3-4](#)).

In this case, the Court finds that the above requests, including emails to or from King and Kelly's email accounts evidencing, documenting, reporting, or complaining about Kelly's behavior and conduct, are relevant to King's claims and CHI's defenses in this case, including CHI's assertion that King cannot meet her burden to establish Kelly's alleged harassment was objectively severe, ([Filing No. 102 at p. 20](#)). See [Fed. R. Civ. P. 26(b)(1)](#)("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"). However, the Court finds that King's requested time periods beginning on January 1, 2008, and January 1, 2010, are overbroad. King alleges Kelly's harassment of her began in January 2015, and therefore the Court will limit further supplementation of Request for Production Nos. 6-8 to the start date of January 1, 2015.

Parties must take "reasonable steps" to preserve ESI relevant to anticipated litigation. See [Fed. R. Civ. P. 37(e)](#). The court may sanction a party for failure for failure to do so if the lost ESI cannot be restored or replaced through additional discovery. *Id.* However, Rule 37(e) does not apply if information is lost before the duty to preserve arises. See [Fed. R. Civ. P. 37(e)](#), advisory committee's note to 2015 amendment. Therefore, the Court must first resolve when CHI's duty to preserve relevant ESI arose. Generally, a defendant's duty to preserve evidence is triggered at the time the case is filed, "unless the defendant before that time becomes aware of facts from which it should reasonably know that evidence is to be preserved as relevant to future litigation." *[The Valspar Corp. v. Millennium Inorganic Chemicals, Inc.](#)*, 2016 WL 6902459, at *4 (D. Minn. Jan. 20, 2016); see *[Blazer v. Gall](#)*, 2019 WL 3494785, at *3 (D.S.D. Aug. 1, 2019)("The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation."). The Rule 37 advisory committee's note to the 2015 amendment explains:

> Courts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant. A variety of events may alert a party to the prospect of litigation. Often these events provide only limited information about that prospective litigation. . . It is important not to be blinded to this reality by hindsight arising from familiarity with an action as it is actually filed.

Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment.

CHI maintains that any duty to preserve did not arise until it received King's attorney's demand letter dated August 16, 2016, by which time CHI had already deleted King and Kelly's emails pursuant to its document retention policy. See Filing No. 92-4 at p. 1 (providing 30-day retention period for non-essential correspondence). CHI asserts that it did not reasonably anticipate litigation prior to its receipt of the demand letter because in King's resignation letter dated March 23, 2016, she did not indicate she intended to file a lawsuit and did not reference Kelly or cite a specific reason for resigning beyond finding a new job opportunity. (Filing No. 87 at p. 7; Filing No. 88-5 at p. 13). CHI explains its routine practice is to retain a custodian's emails on a disk for 30-days after a custodian leaves the organization, after which the emails are deleted from the disk. CHI represents it sometimes retains archived backup of emails, but CHI cannot confirm if archived backup data for deleted custodians exists because the only way to confirm whether backup data exists requires initiating the retrieval process. CHI states it costs approximately $18,000 ($1,500/month) for one custodian's data to be recovered for a single year, and perhaps more if the data is stored to multiple disks. Retrieval is not guaranteed and the success rate is about 70-80%. (Filing No. 83-21).

King argues that CHI's duty to preserve ESI was triggered at least by May 2015 because at that time her supervisor, Mike Tiesi, Regional Senior Director of Pharmacy Services, sent emails to Todd Hoffman, CHI Senior Human Resource Business Partner, stating Tiesi's belief that "we do not have a safe work environment for [King] and her staff because of [Kelly]." Tiesi recommended terminating Kelly's employment and believed "security and police need to be alerted" as Kelly's termination was a "high risk situation." Tiesi was of the opinion that Kelly was "fixated on [King]" and was "creating a hostile work environment." (Filing No. 92-3). However, Kelly's employment was not terminated at that time. Nearly a year later, in March 2016, Tiesi exchanged emails with CHI HR representative Denise Robertson wherein Tiesi stated his decision was to "not bring back a subpar employee [Kelly] to inflict similar issues on another pharmacy." Robertson responded that her "role is to advise you on what we legally need to do and what risk

we have as an organization and potential litigation the organization will face based on your decision;" when Tiesi confirmed that his "decision is quite clear not to retain [Kelly] as a CHI Health Employee," Robertson responded, "I will ask you to contact [Kelly] today or latest Monday and share your decision to release him from employment and why. . . . I do need to share this is a high risk decision." ([Filing No. 83-22 at pp. 1-2](#)). Kelly was terminated on April 4, 2016.

Although it is a close call in this case, the Court ultimately agrees with King that the emails exchanged between Tiesi and CHI HR representatives demonstrates that CHI believed it faced potential litigation resulting from the "high risk decision" to terminate Kelly's employment, which was apparently based in part on his problems with King. See, e.g., *Broccoli v. Echostar Commc'ns Corp.*, 229 F.R.D. 506, 510-11 (D. Md. 2005)(concluding defendant's duty to preserve evidence arose over a year prior to filing of the suit when defendant was notified of sexual harassment and retaliation complaints). Accordingly, CHI was required to take reasonable steps to preserve ESI of "those [persons] likely to have relevant information – the key players in the case[.]" *Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 233 (D. Minn. 2019)(quoting *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liability Lit.*, 299 F.R.D. 502, 517 (S.D. W. Va. 2014).

In this case, the "key players" include King and Kelly. It would not be unreasonable for CHI to have retained emails from Kelly and King's accounts for more than 30-days after their departure from employment with CHI, particularly when CHI was concerned it faced potential litigation from Kelly's "high risk" termination. CHI's document retention policy provides for three levels of retention for general correspondence: 30-days for "Non-essential correspondence," a "Short-Term" retention period of 1-year, and a "Long-Term" retention period of up to 7-years. CHI also retains general correspondence categorized as "General Support Material," which includes materials such as "calendars, diaries, notepads, personal files, telephone message pads, [and] chronological correspondence files," for 1-year. ([Filing No. 92-4 at p. 1](#)). Given that CHI believed terminating Kelly's employment was a "high risk decision," and considering the other circumstances known to CHI prior to receiving King's demand letter, CHI should have taken the reasonable step of suspending its 30-day deletion policy of Kelly's and King's email correspondence, particularly when considering CHI's policy provides for 1-year retention of inconsequential items like calendars and notepads. See *Valspar*, 2016 WL 6902459, at *8 (the duty to preserve evidence preempts a business' regular document retention policy)(citing *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 268 (8th Cir. 1993)).

King requests severe sanctions under Rule 37(e)(1) and (e)(2), including attorney fees and costs, an adverse inference, and the denial of Defendants' ability to provide any evidence in rebuttal to the adverse inference at trial. ([Filing No. 91 at p. 16](#)). However, Rule 37(e) permits the Court to sanction a party only if the lost ESI "cannot be restored or replaced through additional discovery." CHI represents that archived backup of deleted data is sometimes retained, but can only confirm if backup data exists by initiating the costly and not always successful retrieval process. ([Filing No. 83-21](#)). At this time, the Court will order CHI to begin the retrieval process for backup data from Kelly's account from January 1, 2015 (the date Kelly's alleged harassment of King began), through April 6, 2016 (the date of Kelly's termination). The Court will not order CHI to begin retrieval of King's backup data at this time because many of King's relevant emails 1) have been preserved by King herself or produced by CHI from available custodians, or 2) may be retrieved from Kelly's backup data. If Kelly's data cannot be restored or replaced, the Court may consider an additional remedy "no greater than necessary to cure the prejudice" to King. [Fed. R. Civ. P. 37(e)(1)](#); see *[Paisley Park Enterprises, Inc. v. Boxill](#)*, 330 F.R.D. 226, 236 (D. Minn. 2019) (finding plaintiffs were prejudiced as they were "left with an incomplete record of the communications that Defendants had with both each other and third parties" as "[n]either the Court nor [the p]laintiffs can know what ESI has been lost or how significant that ESI was to this litigation."). The Court cautions King that severe sanctions will likely not be warranted even if all emails from Kelly's account cannot be restored or replaced. The record before the Court demonstrates that CHI did not act in bad faith and has attempted to comply with King's discovery requests to the extent it was able. CHI performed multiple searches for ESI and produced responsive documents using King's requested search terms through seventeen custodians, including Denise Robertson, Todd Hoffman, Andrea Hunter, Marie Knedler, Michael Teisi, Christopher Evans, Kevin Nokels, Brad Stuva, and Johnna Allen. ([Filing No. 87 at p. 9](#); [Filing No. 88-1](#); [Filing No. 88-2](#)).

Additionally, the Court's ruling above applies only to emails. The Court finds that CHI has no further duty to supplement instant messages, voicemails, and text messages. CHI explains it used Microsoft Lync as its internal messaging system during 2015 and 2016, and that instant messages sent through Microsoft Lync were saved in Outlook only if the save feature was enabled on a user-by-user basis. CHI switched to Skype for Business in 2017. CHI represents that it has produced non-privileged, responsive Skype messages and any user-saved Microsoft Lync

messages. CHI represents it "does not save voicemails or utilize any program to forward voicemails to email," so that data never was available. CHI also represents that none of the custodians identified by King use or used company-issued phones, so any text messages sent by those non-parties using their personal devices are not reasonably available in the possession, custody or control of Defendants. ([Filing No. 83-21 at p. 4](#)). As such, the Court finds CHI has no further duty to supplement instant messages, voicemails, and text messages.

Aside from the disputed ESI discussed above, King also asks the Court to order CHI to supplement Request for Production No. 10, which requests "all documents generated or received by CHI's Employee Assistance Program ("EAP") concerning Plaintiff or Larry Kelly." ([Filing No. 82 at p. 16](#); [Filing No. 83-3](#)). King believes CHI did not produce all evidence of evaluations or treatments of Kelly in 2015 (including any evaluation by Dr. Arun Sharma), which were relied upon by CHI in determining whether Kelly could return to work in 2015. King specifically requests that CHI identify whether documents generated or received by CHI's "Violence Intervention Prevention Center" are being withheld or do not exist. ([Filing No. 91 at p. 17](#)). The Court will grant this request. CHI shall supplement its response to Request No. 10 as requested by King or state whether the requested documents do not exist.

Finally, King asserts CHI failed to fully answer and asserted improper objections to Plaintiff's Interrogatory No. 5, which seeks specific information related to CHI's ESI searches. The Court finds supplementation of this interrogatory is not warranted as CHI has provided a full and complete answer through the various telephone conferences and its many submissions to the Court.

CHI has filed a Motion to Strike the Declaration of Katherine A. McNamara ([Filing No. 89](#)), which was offered by King in support of the motion to compel. See [Filing No. 83-1](#). CHI asks the Court to strike portions of paragraphs 7, 8, 12, 13, 14, 15, 17, 21, 25, 26, and 27, and the entirety of Paragraphs 9, 16, 18, 19, and 22, on the basis that Ms. McNamara's Declaration contains impermissible and self-serving testimony outside the scope of identifying and authenticating the evidence in support of King's motion to compel, as well as unnecessary information and arguments. ([Filing No. 90](#)). In reviewing the Declaration, the Court considered only Ms. McNamara's statements that would be admissible at trial in its analysis of the parties' legal arguments, and disregarded any legal analysis or other improper statements and arguments contained within the Declaration. Upon consideration,

**IT IS ORDERED**:

1. Plaintiff's Motion to Compel Defendants' Discovery Responses and Request for Rule 37 Relief ([Filing No. 81](#)) is granted in part, and in part denied;
    a. CHI shall begin the retrieval process for backup electronic data from Lawrence Kelly's account from January 1, 2015 (the date Kelly's alleged harassment of King began), through April 6, 2016; and
    b. CHI shall supplement its response to Request No. 10 as set forth above.
2. Defendants' Motion to Strike the Declaration of Katherine A. McNamara ([Filing No. 89](#)) is denied.
3. The parties shall contact the undersigned magistrate judge to schedule a telephone conference to discuss further scheduling matters related to this Order. The briefing deadlines on Defendants' Motions for Summary Judgment ([Filing No. 97](#); [Filing No. 101](#)) are suspended pending that telephone conference.

Dated this 9th day of December, 2019.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge
